Bigger, J.
This action is brought by the prosecuting attorney under favor of Section 2921 of the General Code, which makes it the duty of the prosecuting attorney, when he is satisfied that funds of the county in the hands of the county treasurer or belonging to the county are about to be or have been misapplied, to apply to the court for an order restraining such misapplication.
Without undertaking to state all of the averments of the petitition,. it is averred in substance that in seventeen of the county funds there is an overdraft amounting to the sum of $233,741.44. It is then stated that there should be in the treasury at the time of the filing of the petition in certain funds, naming them, the sum of $515,063,75, and that in fact there is in the treasury al *338 together in cash, including the amount in depositaries, a total sum of $447,455.38, leaving a deficit in these funds as a result of such overdrafts of $67,618.37. It is then stated that the county commissioners have attempted by resolution to transfer to the general county fund the following sums from the following funds:
Duplicate Tax Payments ........... $ 1,033.19
King Avenue Bridge Fund........... 40,000.00
Cleveland Avenue Bridge Fund...... 30,000.00
Tax Inquisitor’s Fee Fund.......... 52,531.81
Election Fund ..................... 1,000.00
Floating Debt Fund................. 296.42
Depositary Interest Fund .......... 10,121.75
Amity Road Fund.................. ' 40,000.00
Delinquent Tax Collections.......... 39,000.00
It is then stated that all of these funds except the Amity road fund and the delinquent tax fund are the same funds before mentioned which should be in the county treasury, and that all of the monies in said funds had been certified to by the county auditor as being in the treasury and contracts had been made on the faith of such certifications except the Amity road fund and the delinquent tax fund. It is then stated that as to the, Amity road fund there has also been a certificate of the auditor that the money is in the treasury, and that a contract has been made on the strength of such certification; that the fund of $39,000 represents the collection of delinquent personal taxes. • It is further averred that the resolution is illegal and void, and that there is no warrant in law for such transfers, and that there will not be money sufficient to reimburse such funds from the next collection of taxes. It is then stated that by a second resolution the county commissioners and auditor attempted to transfer the following sums from the funds named to the general county fund:
"West Fifth Avenue................. $ 4,363,27
East Broad Street :................. 6,881.24
North High Street ................ 1,921.37
North Broadway .................. 8,672.64
Fifteenth Avenue .................. 8,870.75
Auditor’s Fee Fund................ 15,718.36
Treasurer’s Fee Fund .............. 21,527.25
Sheriff’s Fee Fund..........:....... 2,515.00
*339 Recorder’s Fee Fund'................ 21,418.67
Clerk of Court’s Fee Fund.......... 4,981.69
Probate Judge’s Fee Fund........... 11,013.84
It is then stated that the board of county commissioners and the auditor had a right to make transfers out of these funds to the general fund, but the exact amount of such funds which they had a right to transfer the relator is not informed, and that he has not the time to ascertain the amount before an irreparable injury will be done. It is then stated that by a third resolution the county commissioners and auditor have attempted to make transfers from the general county fund to certain other county funds, naming them, in a total amount of about $150,000. This, it is stated, is' illegal and void for the reason that there is no money in the general county fund, and that said general county fund is overdrawn to the extent of more than $109,000. It is averred that there is no money in process of collection which can be applied to liquidate such transfers. The relator prays that the treasurer may be enjoined from misapplying such funds or any part of the same, and that the commissioners and the auditor shall be enjoined from transferring or attempting to transfer or taking any further steps towards transferring any of the funds •mentioned.
The defendants have answered jointly and admit the overdrafts stated in the petition in the seventeen funds named, and that it amounts to $22,741.44. They admit that the total amount of cash in the treasury and depositaries is correctly stated, except that the' amount of cash in the treasury is $23,455.38, being $1,000 in excess of the amount stated in the petition. They admit that bonds have been sold and cash has come into the treasury in the amount stated in the petition, and that there was also in the treasury the amounts stated in the petition in certain other funds, making a total, as alleged in the petition, of money which should be in the treasury of $515,063.75; and that owing to the fact that the levies made in 1910. and preceding years were insufficient to pay the expenses of the county, and owing to the fact that the Legislature had imposed an expense of about $100,000 upon the county as the cost of the quadrennial appraisement, there was not enough money in the treasury to pay all of said- funds by the sum of about $67,000, not taking into account the sum of about *340 $41,000 in the treasury derived from delinquent tax collections. The defendants then state that there is now owing to the county and' the county will receive for work already done and paid for by the county a total sum of $73,361.57, and that there are no outstanding bonds or obligations against this amount, and that this amount will certainly come into the treasury; that there is also a large amount of money owing to the county for the improvement of certain streets, from which source about twenty-five thousand dollars was collected during the last year, but that the amount which will be realized during the present year can not be stated; and that there are no outstanding bonds or obligations against this. Furthermore that at the close of the year 1910, there was remaining unpaid taxes on real estate in a sum in excess of $76,000, and a sum of $158,926.26 remaining unpaid on personal property; that these are now in process of collection, and that when collected the county will receive its proportion of the same. The defendants admit the passage of the resolution in question, and deny the other averments of the petition. The der fendants then state that there were in each of the funds mentioned in the second resolution above referred to the sums of money transferred, and in some of them more than the amount transferred ; that in each case the funds represent the surplus of the net proceeds of a special tax or the proceeds of a loan for a special purpose, and that the sums transferred were not needed for the purpose for which the tax was levied or the loan made. As to the resolution first above mentioned the defendants say that the amount transferred from the several funds to the general fund will not be needed until after the period fixed by law for the first payment of taxes. They state that after these transfers to the general fund there was in that fund the sum of $152,760.75 in excess of that which would be needed for the purposes of the fund until after the period fixed by' law for the next payment of taxes, and that such funds to which the transfers were made were exhausted, and that the funds transferred to said exhausted funds were needed. The defendants state that they took this action to protect the credit of the county and to save the interest which would otherwise- accrue on unpaid warrants. The defendants say they wish the matter to be determined by the court, and that it may be found that they have not misapplied any funds, and that the action ágainst them may be dismissed.
*341 A reply was filed, but it is unnecessary that I should state the averments contained therein, as it raises no new issue material to the determination of the question submitted to the court.
It is apparent from the statements of the petition which are admitted by the answer that the county finances are in a somewhat embarrassing condition. The evidence does not disclose ¡the cause of this, but it is said in the answer that it is due to the fact that there was not a sufficient tax levy made in the year 1910 and preceding years to meet the current expenses of the county, and that an extraordinary expenses was imposed upon the county in the year 1910 by reason of the quadrennial appraisement. This is not denied by the relator, except that in the reply it is stated that the quadrennial appraisement did not cost the county the sum of $100,000. It is not material, however, to the determination of the question submitted to the court to trace the condition to its source, as, in the language of an eminent statesman, it is a condition and not a theory which confronts Franklin county at this time. The county funds are overdrawn to a large amount and there is not sufficient money now in the treasury to supply these funds, and this shortage will necessarily be very considerably increased before the taxes now in process of collection will be available, which will not be until about the first of March. To add to the embarrassment of the situation, the Legislature at its' last session passed what is known as the Smith one per cent, tax law, which limits the levy of taxes to ten mills for all purposes, with a proviso that by a vote of the people this may be increased to fifteen mills. Furthermore the statute limits the gross amount of taxes which may be assessed in the year 1911 to the amount which was assessed in the year 1910, which it appears was largely insufficient to pay the expenses of that year. Furthermore Section 5649-3(2, being a part of the Smith one per cent, law, provides that at the beginning of each fiscal half year the various boards mentioned in Section 5649-3a, which includes the county commissioners, shall make appropriations for each of the several objects for which money is to be provided from the monies known to be in the treasury from the collections of taxes and all other sources of revenue, and all expenditures within the following six months shall be made from and within such appropriations and balances thereof, but no appropriation shall be made for any purpose not *342 set forth in the annual budget, nor for a greater amount for such purpose than the total amount fixed by the budget commissioners, exclusive of receipts and balances.
It is apparent from the evidence before the court that it will require rigid economy on the part of the county during the coming year to enable it to meet its current expenses from the tax levy made in 1911 and .now in process of collection, and there will probably be no surplus, or at least not sufficient, after the payment of the expenses, to reimburse the depleted funds.
It is proper that I should say in this connection that there is no claim here that any of this shortage in the funds was not expended for the benefit of the tax-payers of Franklin county. A very large amount of money was spent the past year in the making of good roads, and far in excess of the expenditure for that .purpose made in the past; and it is not denied that the making of the quadrennial appraisement entailed a heavy expense on the county. It is simply a ease, it seems, where the county did not levy and collect a sufficient amount of taxes to meet the expenses of the past year, and this was probably true for preceding years.
That some very troublesome questions will be presented as a result of this situation is apparent. It would be gratuitous, however, upon the part of the court to undertake to anticipate what these may be and how they should be met, except in so far as they are involved in the determinaiton of the question presented here for decision. It never aids, but only leads to further embarrassment and confusion for a court to go beyond the decision of the question submitted. It is not the province of the court to give legal advice except in those cases provided by the statute which authorize certain fiduciaries to appeal to the court for advice in the discharge of their trust.
It is scarcely necessary that I should say that, of course, the county of Franklin will be compelled to pay its legal obligations, and neither the Smith law nor any other law can be permitted to require the county to repudiate its legal obligations. It is to be hoped, however, that this law, which is one enacted for the protection of the tax-payers against the extravagant expenditures of public funds, can be so construed, together with the other laws, as to enable the county to meet all its legal obligations. But as I view the question here submitted, it is not to be disposed of by a *343 consideration of the difficulties which will confront the county in the future. "Sufficient unto the day is the evil thereof.”
The question here submitted for decision is: Does the law, as it stands, authorize the defendant board of commissioners and auditor to make the transfer of the funds covered by these resolutions to- other funds which are exhausted, to meet the present needs? The question here presented is one which, as I view it, must be de7 termined by a construction of the various statutes on the subject of the transfer of funds; and in construing'the laws relating to the powers of the county officers the rule upon the subject of their powers must be kept constantly in view. Corporatiohs, whether strictly such or only quasi corporations, are limited in the exercise of powers to those specifically conferred upon them by law, and those necessarily incident to the exercise of the powers granted. 7 O., part 1, p. 232.
Judge Brinkerhoff says in Commissioners v. Mighels, 7 O. S., 116:
“Neither a county nor the board of commissioners of a county is a corporation proper; it is at most but a local organization which, for purposes of civil administration, is invested with a few functions characteristic of corporate existence. But it is an established rule, that' a grant of powers to a corporation proper shall be strictly construed, and it seems to us that this rule is at least equally applicable in any inquiry into the' powers and capacities of a quasi corporation, whose powers and functions are, from their very nature and object, more strictly limited than those of a corporation proper.”
This doctrine is so clearly established that no one has seen fit to question it since that time. I come, therefore, to a consideration of the statutes on the subject of the right and power of the commissioners and auditor to take the action which the answer admits they have taken. In the determination of this ques-' tion it is necessary to construe.several sections of the statutes which relate to the subject of the transfer of county funds from one fund to another.
Section 5699 of the General Code provides:'
“The county auditor shall carefully ascertain the net amount of taxes collected for each particular purpose. A specific fund shall not be used for any other purpose than that for which it. was levied until such purpose has been satisfied.”
*344 This statute has been long on the statute books. It will be found in the 56 O. L., at page 175, Section 5, and was passed in 1859. It is the claim of the prosecutor that this section forbids the transfer of these funds.’
Section 2443 of the General Code provides:
“The county commissioners may transfer an unexpended balance .of any fund, raised for the purpose of erecting public buildings, remaining in the treasury, to any other fund, or to any other purpose for which money is needed by the county. If there is a fund in such treasury that has been levied and collected for a special purpose, and such fund, or a part thereof, will not be needed for such purpose until after the period fixed by law for the next payment of taxes, and any of the other funds of the county are exhausted, the commissioners may transfer such special fund, or such part thereof as is needed to such exhausted fund, and reimburse such special fund from the taxes levied for such other fund, as soon as they are collected."
This act will be fopnd in 66 Q. L., 52, Section 16, passed in 1869, ten years later than the other statute. This act being passed subsequent to Section 5699 of the General Code necessarily modifies that section to the extent therein provided.
Section 5654 provides:
“When there is in the treasury of any city, village, county, township, or school district, a surplus of the proceeds of a special tax, or of the proceeds of a loan for a special purpose, which is not needed for the purpose for which the tax was levied or the loan made, it may be transferred to the general fund by an order of the proper authorities entered on their minutes.”
This act will be found in the 75 O. L., at page 132, passed in 1878.
Section 2296 of the Genera! Code provides:
“The county commissioners, infirmary directors of a county or municipality, township trustees, the board of education of a school district or the council or other board having the legislative power of a municipality, . may transfer public funds under the supervision, from one fund to another, or to a new fund created under their respective supervision, in the manner hereinafter provided, which shall be in addition to all other procedures now provided by law.”
*345 This act will be found in 95 O. L., 371, Sections 1 and 2, and was passed in 1902. This section and the following sections of the General Code, to and including Section 2302, provide briefly that where the county commissioners by resolution declare there is a necessity for a transfer of funds from one fund to another, a petition shall be filed in the court of common pleas. These sections provide for the procedure in this court upon the filing of such petition, and 'that the court, if it finds there are good reasons for making the transfer, may so order.
This statute relating to transfers upon the order of the court of common pleas was passed subsequent to the others, and'provides a more elastic scheme of transfers than had been before provided, and vests a large discretion in the court in the ordering of such transfers. This discretion thus vested in the court, it'is apparent from the reading of the several statutes, was not vested in the county commissioners and the auditor, but their powers in that regard are strictly limited to the cases provided by the statute, and the grant is to be strictly construed.
It is the claim of the prosecuting attorney, as I understand him, that such transfers can only be made upon an order of the common pleas court. It is his claim that the language of Section 5654, “may be transferred to the general fund by an order of the proper authorities entered on their minutes,” has reference to the court of common pleas; but this Section 5654 was enacted long prior to Section 2296, and at a time when the court was clothed with no jurisdiction over the subject of the transfer of funds. Furthermore, Section 5654, as originally enacted, provided that “the authorities having in charge the disbursement of such funds are hereby authorized and required to cause such funds to be transferred by resolution duly entered upon the record of their respective boards, to the general revenue fund.” This act was amended in 1896, and the phraseology slightly changed; that is, the language, “entered upon the records of their respective boards,” was changed to, “an order of the proper authorities entered on their minutes.” This change in phraseology clearly did not change the meaning of the statute, and the reference to the proper authorities is to the county .commissioners, and the order to be entered is to be entered on their minutes.
*346 The resolution of the commissioners which transferred the balance of the funds remaining from the West Fifth avenue improvement fund and the East Broad street improvement and North High street improvement and North Broadway improvement and the Fifteenth avenue improvement is, as to these funds, clearly authorized by the provisions of Section 5654. As to the remaining funds covered by that resolution, their action is clearly authorized by the provisions of Section 2985 of the General Code, which authorizes the transfer of the fee funds by the county officers to the general fund. I find, therefore, that as to this resolution, the- action of the county officers in making the transfer was in accordance with law.
Coming then to a consideration of the action of the commissioners in undertaking to transfer the funds covered by the other resolution, I find that it covers funds realized from the sale of bonds, from delinquent tax payments, from the election fund, floating debt fund, depositary interest fund, and undivided taxes.
First, as to the right and power of the commissioners to transfer undivided taxes to exhausted funds: This authority, if it exists, can not of course be found in Section 5654, which only authorizes the transfer of unexpended balances. It is claimed the authority is found in Section 2443, which authorizes a temporary transfer of funds to exhausted funds. This act was passed, as I have stated, in 1869.
Section 2571 of the General Code was passed in 1904, and provides:
“When any fund is exhausted, the county auditor and treasurer shall make an estimate of the amount of money belonging to such fund which has been collected as taxes and credited to the undivided tax funds in the treasury. If the commissioners deem it advisable by an order entered on their journal, they may authorize the auditor and treasurer to transfer from such undivided tax funds to the fund so exhausted an amount not to exceed three-fourths of the amount so estimated to belong to the exhausted fund. At the next semi-annual distribution of taxes the amount so transferred shall be deducted from the total amount found to be due such fund.”
Even if it should be conceded that Section 2443 authorized a temporary transfer of'the whole amount of these undivided taxes, *347 this act passed subsequent to Section 2443 must of necessity repeal by implication Section 2443 as to .undivided taxes. For, this being the last expression of the legislative will covering the subject of the temporary transfer of undivided taxes, limits the power of the commissioners to a transfer temporarily of only three-fourths of the amount éstimated to belong to the exhausted fund. But, as I construe Section 2443, it can not be made to cover these funds. Section 2443 authorizes the transfer of funds levied and collected for a special purpose, while these undivided taxes are not such a fund. I conclude, therefore, that by no construction, either liberal or strict, has the Legislature authorized the transfer of these undivided taxes in bulk, and that the attempt to do so by the commissioners was unauthorized and void, because beyond their power.
Coming next to the proceeds of bond sales: Does Section 2443 authorize the transfer of these funds ? This section first provides that the county commissioners may transfer the unexpended balance of any fund raised for the purpose of erecting public build-, ings in the treasury to any other fund or to any other purpose for which money is needed by the county. I call particular attention to the language of this first grant of power. It authorizes the transfer of any fund raised for the purpose of erecting public buildings. This word “raised” is broad enough to include money derived either from taxation or from a loan. It was doubtless intended to refer to the transfer of a balance of the proceeds of a loan, or as it would ordinarily be, the balance of the proceeds of a bond sale, which would remain unexpended in the treasury; but when we come to the next grant of power in the same section immediately following it, of the statute, we find the language to be very different. The grant here is to transfer a fund that has been levied and collected. This manifestly relates to a fund resulting from the levy and collection of taxes, and not to the proceeds of a bond sale or a loan. If the Legislature had intended to make the same grant of power to the county commissioners in this second provision for transfer as in the first, ■ naturally the same language would have been used; that is, a fund raised for- a special purpose. When we turn to the language. of Section 5654 we find the Legislature clearly making the distinction between a fund raised by the sale of bonds or a loan, *348 and a fund produced by a tax levy. The language of Section 5654 is, “When there is in the treasury of any city, village, county, township or school district, a surplus of the proceeds of a special tax or of the proceeds of a loan for a special purpose, which is not needed,” etc., “it may be transferred.” It seems to me that even by a liberal construction of the provision of Section 2443, it can not be made to cover the transfer of the proceeds of bond sales, ^ut, as I have already pointed out, when we are called upon to construe a statute which confers power upon a board of county commissioners, the grant is to be strictly construed against the board, and so construing it I see no escape from the conclusion that the statute does not authorize the commissioners to transfer such funds to other funds.
It has been argued that this is wise business policy, but of course that argument can not be given any weight in face of the rules of law applicable to the construction of such grants of power; and I further call attention to the fact that the Legislature, when in 1902 it added to the law upon this subject of transfer of funds a provision for an action by the commissioners in this court, had manifestly reached the conclusion that cases might arise where it would be good business policy to make transfers in the county funds which were not authorized by the laws then in force, and to meet these they added the provision for such an action to obtain the authority from the court, and clothed the court with a broad discretion in the matter. But this will not authorize the court to say that the commissioners may exercise this discretion. To do so would be judicial legislation.
Nor can duplicate tax payments be said to be a fund levied and collected for a special purpose.
Neither is the so-called floating debt fund nor the depositary interest fund a fund levied and collected for a special purpose.
As to the election fund, this is, as I understand it, a fund levied and collected, but I am of opinion it is not within the meaning of the law a special fund, as it is, as I understand it, one of the regular funds of the county, for which taxes must be regularly levied and collected and appropriated.
I conclude, therefore, that this resolution undertakes to transfer funds which the commissioners are not empowered by law to *349 transfer, and that for that reason their action in attempting to do so was void, and that the funds thus attempted to be transferred should be restored to the funds to which they belong.
This disposes, of course, of the third resolution, for if the commissioners had no authority to make a transfer from the funds covered by this resolution, there is no money in the general fund to be transferred to the other fund.